SO ORDERED.

SIGNED this 11 day of March, 2016.

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| MICHAEL JAMES BLACK | 16-00230-5-JNC |
| PAMELA FIELDS BLACK | |
| DEBTORS | |

### ORDER DIRECTING TURNOVER AND IMPOSING SANCTIONS

The matter before the court is the motion filed February 4, 2016 by Michael J. Black and Pamela F. Black ("Mr. and Mrs. Black" or "Debtors") (dkt entry 16; the "Motion") seeking an order directing turnover of property of the bankruptcy estate pursuant to 11 U.S.C. § 542 and imposition of sanctions for violation of 11 U.S.C. § 362 against the North Carolina Department of Revenue ("NCDR") and Wells Fargo Bank, N.A. ("WFB"). NCDR filed a response on February 22, 2016 (dkt. Entry 25; the "Response"). A hearing was held in Greenville, North Carolina on March 2, 2016. Upon the matter being called, the Debtors and NCDR appeared through counsel. WFB did not appear at the hearing and did not file a response to the Motion. The court has reviewed the pleadings and record in the case, and considered the arguments of counsel and evidence presented at the hearing. Based thereon, the court makes the following findings of fact and conclusions of law:

### FACTUAL FINDINGS

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157. The court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334, and authority to hear this matter pursuant to the

General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.   The Debtors filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code on January 15, 2016 (the "Petition Date"). The automatic stay of 11 U.S.C. § 362 became effective immediately upon the petition filing pursuant to 11 U.S.C. § 362(a).

3.   At the time of their case filing, the Debtors were subject to filed tax liens and claims for unpaid state taxes owed by them to the NCDR. The creditor matrix attached to the Debtors' filed petition lists and includes the proper and registered mailing address for the NCDR for all cases. On the same day as the bankruptcy case filing, the "Official Form 309I: Notice of Chapter 13 Bankruptcy Case" was mailed to the NCDR and all other creditors.

4.   Notwithstanding the bankruptcy case filing and notice, on or about January 24, 2016, the NCDR issued a bank account garnishment order against the Debtors' bank account xxxxx9465 held by them with WFB (the "WFB Account").

5.   On January 27, 2016, WFB issued and processed a "Legal Order Debit" upon the WFB Account for $289.10, marking the involuntary transfer as to or for the benefit of the NCDR. In addition, WFB unilaterally imposed a $125.00 "Legal Order Fee Debit" charge against the WFB Account. The next day, WFB debited a further $301.74 from the WFB Account marked as a Legal Order Debit to or for the benefit of the NCDR.

6.   The Debtors learned of the garnishment on January 28, 2016 when Mrs. Black attempted to use her WFB Account debit card to pay for lunch. The card payment was rejected due to insufficient funds caused by the debits. An overdraft fee of $35.00 was imposed by WFB as well.

7.   Upon the debit card payment being rejected, the Debtors immediately accessed a statement of their WFB account online. In reviewing the statement, they learned of the garnishment and contacted their counsel. The Debtors promptly notified counsel and provided her office with a printed copy of the account statement and a copy of the levy.

8.   That same day, Debtors' counsel contacted the Bankruptcy Department of the NCDR and advised it of the Debtors' bankruptcy filing. A representative for the NCDR indicated to Debtors' counsel that a release of the garnishment would be sent to WFB immediately.

9.   Upon learning of the bankruptcy case filing, NCDR faxed and mailed a letter to WFB's "Writs and Levies Processing" department located in Phoenix, Arizona. In that letter, NCDR also informed WFB of the bankruptcy case, released the garnishment, and requested that any garnished funds not already sent to it be released back to the Debtors. The NCDR fax receipt presented at hearing shows that the letter was in fact received by WFB on January 28, 2016.

10.   Inexplicably, even after receipt of the letter and being informed of the bankruptcy case filing by both NCDR and Debtors' counsel, WFB refused to release the garnishment.

11.  On February 1, 2016, Mr. Black visited the WFB local branch located on Raleigh Road Parkway in Wilson, North Carolina (the "WFB Local Branch"). He spoke to a WFB representative in person regarding the garnishment. He informed the representative of the pending bankruptcy case, and she informed him that the garnishment order was in effect and would remain in effect until February 11, 2016.

12.  That same day, Debtors' counsel or her office contacted the NCDR again. A representative for the NCDR stated that while a release of garnishment had previously been sent to WFB, he would send another release of garnishment immediately to WFB's "Writs and Levies Processing" department. The NCDR faxed a copy of the garnishment release it sent to WFB to Debtors' counsel.

13.  On February 1, 2016, two more $35.00 overdraft fees were charged against the WFB Account by WFB. The returned items were directly caused by the garnishments.

14.  On February 2, 2016, Debtors' counsel contacted the WFB Local Branch twice. Debtors' counsel repeatedly advised the local representative of the Debtors' bankruptcy. The local representative stated that no release was received, and the Debtors' WFB account would continue to be levied against until February 11, 2016.

15.  During the second conversation between Debtors' counsel and the representative of the WFB Local Branch, the representative provided counsel with a new phone number for a different department of the NCDR as a point of contact. Debtors' counsel then contacted the NCDR using the phone number provided by the WFB Local Branch representative, and an NCDR representative explained that no levies were showing as currently in effect against the Debtors, as two releases were previously sent to WFB.

16.  When WFB refused to heed the admonitions of Debtors' counsel, she filed the Motion on February 4, 2016. NCDR was served along with its counsel by first class U.S. mail. WFB was served by certified mail, return receipt requested, and by first class U.S. mail at different offices pursuant to the E.D.N.C. Service Guidelines for "FDIC Insured Depository Institutions." The U.S. Post Office's tracking system shows that WFB actually received and signed for the Debtors' certified mailing of the Motion on February 8, 2016. A copy of the Motion was mailed to the WFB Local Branch as well.

17.  Upon receiving the Motion, NCDR redoubled its efforts to have WFB stop debiting the WFB Account on the now withdrawn garnishment. A second letter was sent by it to WFB along with placed telephone calls insisting that WFB extinguish the garnishment. Despite the repeated communications from NCDR, the certified mailing and the filing of the Motion by the Debtors, WFB failed to release the garnishment and refused to return the funds. To the contrary, it continued to garnish the WFB Account. On February 9, 2016, a third Legal Order Debit for $36.65 was imposed and on February 11, 2016, a further $153.32 was taken from the WFB Account. At the end of that same date, mercifully, the garnishment extinguished by its own terms.

18.     On February 16, 2016, the $125.00 Legal Fee Debit was reversed by WFB. However, it has not returned the $780.81 in Legal Order Debits or the $105.00 in overdraft charges to the WFB Account.  WFB has not forwarded the garnished funds to the NCDR, so the whereabouts of those funds remain unknown.  Therefore, after crediting the returned $125.00 Legal Fee, WFB has not accounted for and continues to hold a net $885.81 in funds taken from the Debtors after the filing of their bankruptcy case.

19.     Legal fees and costs of at least $3,000.00 have been incurred in the course of this matter by Debtors and are due to Debtors' counsel.

## DISCUSSION

20.     Pursuant to 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."  If the violation occurs while a party is acting in good faith, the aggrieved party is "limited to actual damages."  11 U.S.C. § 362(k)(1).

21.     Furthermore, E.D.N.C. Local Bankruptcy Rule 9011-3(b) provides: "(b) SANCTIONS UNDER § 362(k).  When determining sanctions under 11 U.S.C. § 362(k), the court shall consider whether the moving party notified the offending party and gave the party an opportunity to cure the alleged violation."

22.     "To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *In re Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995).  In interpreting *Strumpf*, this court previously held that "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC* (*In re Lofton*), 385 B.R. 140 (Bankr. E.D.N.C. 2008).   Additionally, a "good faith mistake is generally not a valid defense."  *In re Fina*, 550 Fed. Appx. 150, 154 (4th Cir. 2014) (citing *In re Barbour*, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987)).

23.      In the present case, NCDR admits to receiving the notice of bankruptcy filing, but due to human error or computer shortcomings, the garnishment was nevertheless issued about a week later.  Because it timely received notice of the petition filing, NCDR had full knowledge of the bankruptcy case pendency.  Its action in issuing the garnishment was willful, even if not taken in bad faith or with ulterior motive. On the other hand, and as noted above, upon learning of the bankruptcy case filing and the erroneously issued garnishment, NCDR attempted to withdraw the tax garnishment without delay. Through no fault of NCDR, WFB refused to cooperate and continued to debit the WFB Account, even after receiving notice of garnishment withdrawal.

24.     Therefore, at most, NCDR is only responsible for the first two debits, a total of $590.84. Furthermore, and commendably, prior to the hearing and due to the refusal of WFB to act, NCDR took the extraordinary step of issuing the Debtors a check for $885.81 to mitigate their losses and make the Debtors whole.

4

25. As a result, NCDR has taken all action it reasonably could to leave the Debtors whole. It did not act in bad faith and is not subject to punitive damages. NCDR's only remaining liability is its share of attorney fees caused by the post-petition garnishment. NCDR is not subject, for example, to attorney fees attributable to the March 2 hearing because it attempted to "roll back the clock" well before then. Consequently, the Debtors' attorney fees attributable to NCDR's actions are limited to the first $500.00 incurred due to the mistakenly issued garnishment.

26. After noting the model of proper action of NCDR, WFB has, in contrast, shown exactly how *not to act* upon learning of a bankruptcy filing. Even after repeated contacts from NCDR, Debtors, and Debtors' counsel, it failed and refused to halt the garnishment. At all times after January 28, 2016, WFB was aware of the bankruptcy case filing, the application of the automatic stay, and the withdrawal of the garnishment by the taxing authority. It took no action to return the funds and repair the damage caused to Debtors. Furthermore, its actions after receiving withdrawal of the garnishment were also illegal under North Carolina law.

27. Even after the passage of over a month, as of the hearing date WFB still had not accounted for the whereabouts of the $780.81 in garnished tax money as those funds have not been paid to NCDR and have not been returned to the Debtors. Also, WFB continues to retain the $105.00 in improper overdraft charges. Furthermore, it forced NCDR to make the Debtors whole in order for NCDR to avoid further liability on its part. The Debtors have suffered unnecessary stress and hardship as a result of WFB's actions. Finally, a hearing was necessary in this matter solely due to the intransigence of WFB, as it could not be bothered to appear at the hearing following proper service of the Motion.

28. In this case, WFB has violated the automatic stay repeatedly. It was notified of the petition filings and given ample opportunity to cure the violation. The original order of garnishment was withdrawn, but WFB ignored the creditor request to cease. Instead, and contrary to both state and federal law, WFB violated the automatic stay, and continued to violate the automatic stay anew on several subsequent occasions. All of such stay violations were willful and actual damages resulted. WFB has acted in bad faith in this matter.

29. WFB has demonstrated callous disregard towards the operation of the United States Bankruptcy Code and the authority of this court.

IT IS THEREFORE ORDERED AND DECREED:

A   WFB is directed to immediately and without delay pay and forward the garnished sum of $780.81 by check or other transfer to NCDR and disgorge the $105.00 of overdraft charges to the benefit of Debtors within fourteen days of the entry of this order.

B.   The NCDR is directed to forward the sum of $395.00 to counsel for the Debtors, being the net of $500.00 in legal fees assessed against it after credit to the attorney fees for the $105.00 overdraft fees funds it has voluntarily already paid.

      C.      Debtors' legal counsel is awarded recovery of fees and costs totaling $3,000.00 in this matter. The balance of the fees and costs, after credit of the $500.00 share apportioned to the NCDR discussed above, is $2,500.00 and is charged and assessed against WFB. Therefore, WFB is directed to immediately and without delay pay and forward the sum of $2,500.00 to the law firm of Beaman & Bennington, PLLC in Wilson, North Carolina in satisfaction of the award of legal fees.

      D.      Additionally, punitive damages of $2,500.00 are charged and assessed against WFB for its willful disregard of the automatic stay. Therefore, WFB is directed to immediately and without delay pay and forward the sum of $2,500.00 to the Debtors or their instruction.

      E.      The court retains all jurisdiction regarding this matter, including enforcement of the findings and awards made in this matter. Debtors' counsel shall be responsible for serving a copy of this order upon WFB and seeking its enforcement. Should WFB to fail to comply and act within fourteen (14) days of the date its notice of this order, Debtors may through counsel seek enforcement by such motion, procedures and remedies as may be available and proper.

**END OF DOCUMENT**